**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LOS CABOS II EQUITY, LLC,
    *Plaintiff*,

    v.                         No. 3:25-cv-01070 (VAB)

STATE FARM FIRE AND CASUALTY
COMPANY,
    *Defendant.*

**RULING AND ORDER ON MOTION TO DISMISS**

Los Cabos II Equity, LLC ("Los Cabos" or "Plaintiff") has filed suit against State Farm Fire and Casualty Company ("State Farm" or "Defendant") alleging breach of contract, breach of the covenant of good faith and fair dealing, and a violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b. *See* Compl., ECF No. 1-1 ("Compl.").

State Farm has moved to dismiss Los Cabos's Complaint in its entirety. *See* Mot. to Dismiss, ECF No. 12 ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED in part and DENIED in part**.

The breach of the covenant of good faith and fair dealing claim and the CUTPA claim, based on a violation of the CUIPA provision prohibiting unfair settlement practices, are **DISMISSED**.

The breach of contract claim remains.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Los Cabos must seek leave to file an Amended Complaint by **May 1, 2026**.

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Los Cabos, a Nevada limited liability company with a business address in California, is registered to do business in Connecticut. Compl. ¶ 1. Since October 2, 2015, Los Cabos has been the owner of and held record title to the Wintonbury Mall located in Bloomfield, Connecticut ("the Mall"). *Id.* ¶ 2.

State Farm, a property casualty insurance company, is an Illinois corporation with its principal place of business in Illinois. *Id.* ¶ 3. State Farm is authorized by the Connecticut Insurance Department to write property casualty insurance policies in Connecticut. *Id.* ¶ 3.

State Farm allegedly issued an insurance policy to Los Cabos with effective dates from September 23, 2022 through September 23, 2023 ("the Policy"). *Id.* ¶ 6. The Policy, which was a renewal of a previously issued policy, was allegedly renewed by State Farm for the September 23, 2024 to September 23, 2025 term. *Id.* ¶ 6. The Policy allegedly insured against direct physical loss to "Covered Property" at the Mall. *Id.* ¶¶ 7, 11. The term "Covered Property" under the Policy includes the building and structures at the Mall, completed additions, fixtures, and permanently installed machinery and equipment, among other items. *Id.* ¶ 12.

On July 8, 2023, Los Cabos allegedly suffered a loss at the Mall due to vandalism and theft. *Id.* ¶ 8. In January 2024, Los Cabos allegedly submitted a claim to State Farm for damage arising from the July 8, 2023 loss. Compl. ¶ 9. In February 2024, Los Cabos allegedly submitted an additional claim for loss and benefits under the Policy arising from the July 2023 property damage. *Id.* ¶ 10.

After receiving notice of Los Cabos's property damage claim in February 2024, State Farm allegedly wrote to Los Cabos questioning whether it was obligated to indemnify Los Cabos

for its loss under the Policy. *Id.* ¶ 22. Specifically, State Farm allegedly questioned whether the damage claimed was a covered loss. *Id.* In April 2024, State Farm allegedly closed the portion of Los Cabos's property damage claim that had been submitted in January 2024 without any explanation or basis under the terms of the Policy. *Id.* ¶ 14.

On March 18, 2024, State Farm allegedly acknowledged receipt of Los Cabos's claim and that the amount of damage and loss under the Policy exceeded $650,000. *Id.* ¶ 23. In April 2024, State Farm allegedly informed Los Cabos that its legal counsel was reviewing the Policy language for a potential subrogation action against the parties potentially responsible for the damage to the Mall. *Id.* ¶ 24. In that communication, State Farm allegedly stated that it would make a coverage determination on Los Cabos's claim by May 2024, but did not do so. *Id.* ¶¶ 24–25.

In July 2024, State Farm allegedly once more wrote to Los Cabos questioning whether it was obligated to indemnify Los Cabos for its loss. *Id.* ¶ 26. As of August 2024, State Farm had allegedly still not accepted or denied coverage for Los Cabos's property damage loss claim. *Id.* ¶ 27. Los Cabos allegedly requested that State Farm accept or deny coverage by September 30, 2024. *Id.* ¶ 27. State Farm allegedly failed to do so, and instead allegedly maintained that there was doubt as to whether the claimed property damage was a covered loss. *Id.* ¶ 28.

On March 18, 2025, State Farm allegedly issued an estimate document and check to Los Cabos for the amount it determined to be the actual cash value payment for Los Cabos's claimed damage and loss under the Policy. *Id.* ¶ 15. The check that State Farm issued on March 18, 2025 allegedly did not include payment for many items covered under the Policy, and State Farm allegedly failed to explain why it did not include these damages in its estimate document and

check. *Id.* ¶ 17. State Farm allegedly stated that additional replacement cost benefits may be due under the Policy when repairs to the Mall were incurred and completed. *Id.* ¶ 16.

Los Cabos allegedly informed State Farm that it disagreed with the property damage calculations reflected in the March 18, 2025 estimate and check, and allegedly stated that State Farm had failed to include portions of the Mall that had suffered physical damage and were the subject of Los Cabos's claims under the Policy. *Id.* ¶ 31. When Los Cabos allegedly requested that State Farm explain its calculations, State Farm allegedly failed to respond in a timely manner. *Id.* ¶ 32.

On April 17, 2025, Los Cabos allegedly submitted a demand for appraisal, in accordance with a provision of the Policy that allows either party to request an appraisal in the event of a dispute over the amount of loss due. *Id.* ¶ 33. The Policy allegedly requires each party to notify the other of their selection of a competent and impartial appraiser within twenty days of receipt of a demand for appraisal. *Id.* State Farm allegedly received Los Cabos's demand for appraisal on April 17, 2025, and was allegedly informed of Los Cabos's appointed appraiser on May 8, 2025. *Id.* ¶ 34. State Farm allegedly failed to inform Los Cabos of its selected appraiser within the twenty-day deadline set by the Policy. *Id.* ¶ 34. State Farm then allegedly told Los Cabos that a portion of the property damage claim was not covered under the Policy. *Id.* ¶ 35.

### B. Procedural History

On June 5, 2025, Los Cabos filed this action in the Superior Court, Judicial District of Hartford. Compl. at 12.

On July 3, 2025, State Farm removed the action to this Court. Notice of Removal, ECF No. 1.

4

On July 9, 2025, State Farm filed a motion to dismiss the Plaintiff's Complaint. Mot. to Dismiss, ECF No. 12 ("Mot.").

On August 11, 2025, Los Cabos filed a memorandum in opposition to the motion to dismiss. Mem. in Opp., ECF No. 16 ("Mem. in Opp.").

On September 5, 2025, State Farm filed its Reply. Reply, ECF No. 21 ("Reply").

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views

the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Los Cabos's Complaint asserts three counts against State Farm: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b.

The Court discusses each claim in turn.

### A.  The Breach of Contract Claim

Under Connecticut law, a breach of contract claim has four elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and

(4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291, 87 A.3d 534 (2014).

State Farm argues that the Complaint does not include sufficient factual allegations to support the contention that State Farm breached the insurance contract by paying Los Cabos less money than it requested in its claim. Mot. to Dismiss at 6-7. Although Los Cabos alleged that State Farm "did not include payment for many items of damage to Covered Property," State Farm argues that Los Cabos "fails to identify any specific damages to identifiably 'covered property' which would have been covered by the policy." *Id.* (citing Compl. ¶ 17). State Farm argues that the lack of factual allegations "identifying the damages covered by the policy and remaining unpaid" makes the Complaint legally deficient. *Id.* at 7.

Los Cabos responds that the factual allegations in the Complaint are sufficient. Mem. in Opp. at 7. Los Cabos argues that it "is not required to plead detailed factual allegations, including the measure of damages or specific proof of causation at the motion to dismiss stage," nor does it need to identify the damages it alleges remain unpaid. *Id.* at 7-8.

State Farm replies that while the pleading standard in Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Reply at 3 (quoting *Iqbal*, 556 U.S. at 678).

The Court disagrees.

Los Cabos sufficiently alleges, and State Farm does not dispute, that an insurance contract existed between the parties. Compl. ¶ 6. Los Cabos alleges that the contract contained a provision insuring against certain losses to "Covered Property," as defined in the Policy, *id.* ¶¶ 7, 11, and that Los Cabos suffered a qualifying loss at the Mall on July 8, 2023, for which it submitted a claim under the Policy, *id.* ¶¶ 8-10. Los Cabos alleges that State Farm later paid part

of the claim, but "[t]he check that the defendant issued on March 18, 2025 did not include payment for many items of damage to Covered Property under the Policy arising from the July 8, 2023 loss and the defendant provided no explanation or reasoning for not including many items of damage to Covered Property on its estimate and its failure to include such damage in the check it issued to Los Cabos." *Id.* ¶ 17. Los Cabos also alleges that it informed State Farm of the alleged deficiencies, but the Defendant "did not timely reply[.]" *Id.* ¶¶ 31-32.

Admittedly, Los Cabos does not allege with particularity which claims for physical damage were not included in State Farm's damages estimate and ultimate payment. But a breach of contract claim only requires Los Cabos to provide a "short and plain statement of the claim," so long as the facts alleged and any reasonable inferences that can be drawn in Los Cabos's favor give rise to a plausible claim for relief. Fed. R. Civ. P. 8(a). Los Cabos satisfies this liberal pleading standard, as the allegations in the Complaint are sufficient for a defendant to "discern the nature of [the] claim against [it]." *Lee v. City of Hartford/Hartford Pub. Schs.*, 289 F. Supp. 2d 25, 28–29 (D. Conn. 2003); *see also Bull Bag, LLC v. Remorques Savage, Inc.*, No. 3:16-CV-1735 (VLB), 2017 WL 3763836, at *7 (D. Conn. Aug. 30, 2017) ("Defendant argues that because the Plaintiff has not pointed to a specific contractual provision dealing with the ownership of intellectual property, Plaintiff cannot allege that the retention of the specifications was a breach of contract. However, the liberal pleading standard does not require such specificity." (internal citation omitted)).

Accordingly, State Farm's motion to dismiss the breach of contract claim will be denied.

### B.  The Good Faith and Fair Dealing Claim

Contracts generally include an implied covenant of good faith and fair dealing, which operates as a rule of interpretation to ensure that rights under the contract are not unfairly

8

impeded. *Magnan v. Anaconda Indus., Inc.*, 479 A.2d 781, 786 (Conn. 1984) (noting that the Restatement (Second) of Contracts recognizes this covenant in every contract "without limitation") (citing Restatement (Second) of Contracts § 205 (1979)); *Gupta v. New Britain General Hosp.*, 239 Conn. 574, 598, 687 A.2d 111 (1996) ("Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") (citation and internal quotation marks omitted); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) ("The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted).

"'To constitute a breach of [this covenant], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.'" *Colon v. Commonwealth Annuity and Life Ins. Co.*, No. 3:08–CV–00079 (PCD), 2008 WL 2185923, at *2 (D. Conn. May 22, 2008) (quoting *De La Concha of Hartford, Inc.*, 849 A.2d at 388); *see also Magnan*, 479 A.2d at 786 (describing the covenant as a "rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended."); *Landry v. Spitz*, 925 A.2d 334, 342 (Conn. App. Ct. 2007) ("'a party who evades the spirit of the contract . . . may be liable for breach of the implied covenant of good faith and fair dealing'") (quoting Williston, *Contracts* § 63.22, p. 508 (4th ed. Lord 2002) (alteration in original)). Bad faith requires fraud, a "'design to mislead or deceive another,'" or "'a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's duties, but by some interested or

9

sinister motive.'" *De La Concha of Hartford, Inc.*, 849 A.2d at 388 (quoting *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992)).

State Farm argues that Los Cabos's Complaint "includes no well-pled factual allegations to support a bad faith claim." Mot. at 8. Rather than allege that any specific act was performed with a "sinister intent," State Farm argues that it did no more than deny the Plaintiff's insurance claim, which is insufficient to plead bad faith. *Id.* at 8-9.

In response, Los Cabos argues that bad faith may also include "neglect or refusal to fulfill some duty or contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Mem. in Opp. at 9 (quoting *Habetz*, 618 A.2d at 504). Thus, Los Cabos argues that it "need only allege that . . . when committing the acts by which it injured Los Cabos's right to receive benefits it reasonably expected to receive under the contract, State Farm was acting in bad faith." *Id.* at 9.

In reply, State Farm argues that it acted with no sinister or interested motive. Reply at 4. Rather, whether Los Cabos was entitled to the unpaid damages is debatable, and therefore "does not give rise to any inkling of a bad faith claim." *Id.* at 5.

The Court agrees.

Los Cabos's claim for breach of the implied covenant of good faith and fair dealing is based on several of State Farm's alleged actions, including: failure to promptly and properly investigate Los Cabos's loss; failure to make a timely coverage decision; failure to explain its coverage determination; issuance of payment on an actual cash value basis when this option was not selected by Los Cabos; failure to comply with its obligations under the Policy; refusal to pay a portion of the property loss claim; and requiring Los Cabos to commence litigation in order to receive benefits due under the Policy. Compl. ¶ 36.

"In the context of an insurance policy, 'violations of express duties are necessary to maintain a bad faith cause of action[,]'" *Courteau v. Tchrs. Ins. Co.*, 243 F. Supp. 3d 215, 219 (D. Conn. 2017) (citing *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961 (Conn. 2013)). Los Cabos has alleged that State Farm violated express duties such as failing to "accept or deny coverage within a reasonable period of time as required by law," or failing to respond to Los Cabos's appraisal demand under the terms of the Policy. Compl. ¶¶ 33-37. And Los Cabos has alleged that "the actions of the defendant were taken in an effort to advance its own financial interests and other interests to the detriment of the interests of Los Cabos and in an effort to delay, deny or avoid payment to its insured under the Policy." *Id.* ¶ 37.

The covenant of good faith and fair dealing "is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." *Magnan*, 1479 A.2d at 786. Los Cabos has also alleged that State Farm "understood and acknowledged that the amount of Los Cabos's claimed damage and loss under the Policy exceeded $650,000." Compl. ¶ 23.

Nevertheless, "bad faith" in the context of this claim means not only having "a design to mislead or deceive another," but also having this design motivated "by some interested or sinister motive." *De La Concha of Hartford, Inc.*, 849 A.2d at 388 ("Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights and duties, but by some interested or sinister motive . . . . Bad faith means more than mere negligence; it involves a dishonest purpose."). While Los Cabos's factual allegations can reasonably be construed as State Farm having misled or deceived it, the Complaint is devoid of allegations sufficient to construe any alleged "dishonest purpose" for doing so. *See Arista*

11

*Records LLC*, 604 F.3d at 120 (citations and internal quotation marks omitted). As a result, the good faith and fair dealing claim must be dismissed.

Accordingly, State Farm's motion to dismiss the good faith and fair dealing claim will be granted.

### C. The CUIPA and CUTPA Claim

"A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F.Supp.3d 110, 117 (D. Conn. 2014). "To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F.Supp.3d 157, 165 (D. Conn. 2014).

Los Cabos alleges that State Farm violated CUIPA by "engag[ing] in unfair settlement practices with such frequency as to indicate a general business practice," and that these "CUIPA violations constitute unfair or deceptive acts or practices in violation of [CUTPA]." Compl. ¶¶ 45, 48. Specifically, Los Cabos alleges that State Farm violated CUIPA by: unreasonably failing to settle claims within the policy limits; misrepresenting facts or policy provisions related to coverage; failing to adopt and implement reasonable standards for prompt investigation and resolution of claims; refusing to accept coverage when liability under the Policy is reasonably clear; failing to promptly explain the basis of its coverage determinations; and compelling Los Cabos to initiate litigation to recover under the Policy. *Id.* ¶ 46.

State Farm argues that Los Cabos does not sufficiently allege that its CUIPA claim constitutes a CUTPA violation, and that an alleged violation of CUIPA alone fails as a matter of law because the statute does not provide a private cause of action. Mot. at 9-10. State Farm

12

argues that Los Cabos has not alleged the necessary facts, including which of its actions amounted to a statutory violation, how its conduct constituted a general business practice, and how its alleged actions injured anyone other than Los Cabos, as required for a CUTPA claim premised on a violation of CUIPA. *Id.* at 10-12. State Farm also argues that in order to plead a colorable CUTPA claim, Los Cabos must identify a "nexus with a public interest" or allege that State Farm's actions amounted to an "immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." Mot. at 13 (citing *Muniz v. Kravis*, 59 Conn. App. 704, 715 (2000)).

In response, Los Cabos argues that it has "allege[d] sufficient factual content to state a plausible claim that State Farm violated CUTPA through its violation of CUIPA." Mem. in Opp. at 15 (noting provisions of CUIPA believed to have been violated and the corresponding allegations in the Complaint). In response to whether Los Cabos has shown that State Farm engaged in unfair settlement practices with respect to multiple claims, Los Cabos argues that it need not meet the more stringent Connecticut state court pleading standard upon which State Farm relies, and that the facts alleged are enough to survive a motion to dismiss and proceed to discovery. Mem. in Opp. at 17. Finally, Los Cabos argues that State Farm's reliance on *Muniz* to require allegations of a public nexus of immoral business practice is misplaced. *Id.* at 18.

In reply, State Farm argues that despite the federal pleading standard, Connecticut substantive law still requires a plaintiff "alleg[e] facts of similarly situated individuals in order to allege sufficient frequency as to indicate a general business practice." Reply at 5. State Farm argues that Los Cabos has not made "even one factual allegation indicating this to be a general business practice," and therefore "this claim must be dismissed on its face." *Id.*

The Court agrees.

Because Los Cabos's CUTPA claim is based on a violation of the CUIPA provision prohibiting unfair settlement practices, Conn. Gen. Stat. § 38a–816(6), Los Cabos must "allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." *Karas*, 33 F.Supp.3d at 117. To allege a general business practice, Los Cabos "must show more than a single act of insurance misconduct; isolated instances of unfair settlement practices are not sufficient[.]" *Id.*

While "there is no 'magic number' of the other instances that a plaintiff must allege," *Belz*, 46 F.Supp.3d at 167, Los Cabos's Complaint is devoid of any allegations that State Farm has acted similarly in any other circumstance. Los Cabos only alleges that based upon State Farm's conduct with respect to its claim, "it is reasonable to infer that the defendant has similarly denied coverage . . . to other insureds[.]" Compl. ¶ 44.

This conclusory allegation does not suffice. *Cf. Belz*, 46 F.Supp.3d at 167 ("[T]he three alleged other instances of unfair settlement practices are sufficient because of the degree of similarity between them and the Belzes' case[.]"); *Karas*, 33 F. Supp. 3d at 117 ("The Karases further allege that Liberty Mutual and its related entities have refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the Karases' policy. Those allegations plausibly allege that Liberty Mutual has committed the proscribed act with sufficient frequency to indicate a general business practice"). As a result, because Los Cabos has not alleged that State Farm engaged in the proscribed acts with sufficient frequency to indicate a general business practice, its CUTPA claim based on violations of CUIPA cannot withstand the Defendant's motion to dismiss.

Accordingly, State Farm's motion to dismiss the CUTPA claim will be granted.

### D. Prejudgment Interest

"Except as provided in sections 37-3b, 37-3c and 52-192a," Section 37-3a of the Connecticut General Statutes provides for prejudgment interest to be awarded "in civil actions at a rate of 10 percent a year" as "damages for the detention of money after it becomes payable." Conn. Gen. Stat. § 37-3a.

State Farm relies on a Connecticut Appellate Court ruling in *Muckle v. Pressley*, 197 A.3d 437 (Conn. App. Ct. 2018), to argue that "absent an offer of compromise, prejudgment interest is not allowed," under Connecticut General Statutes § 52-192a(c). Mot. at 13.

In response, Los Cabos argues that *Muckle* is inapposite because it concerns a claim of negligence, which the Connecticut state legislature chose to exclude from Section 37-3a. Mem. in Opp. at 19; *see also* Conn. Gen. Stat. § 37-3b (defining the rate of interest recoverable in a negligence action). Instead, Los Cabos argues that Section 37-3a governs the assessment of prejudgment interest for its contract claims. *Id.*

The Court agrees.

The Second Circuit has held that Section 37-3a applies to claims alleging breach of contract, and awarding interest under this section is a matter within the sound discretion of the trial court. *See Camp, Dresser & McKee, Inc. v. Tech. Design Assocs., Inc.*, 937 F.2d 840, 844-45 (2d Cir. 1991) ("The case before us is a contract claim and the Magistrate Judge specifically found, as he was entitled to do, that CDM was entitled to 10% prejudgment interest on the $600,000 from November 6, 1989 until the date judgment was entered. That is the period of time that CDM was deprived of the use of the money. Awarding interest under § 37–3a in such a circumstance is a matter within the sound discretion of the trial court."). As a result, because Los

15

Cabos alleges a claim for the wrongful detention of money, and none of the exceptions enumerated in Section 37-3a apply to its contract claims, prejudgment interest remains available.

Accordingly, State Farm's motion to dismiss any possibility of an award of prejudgment interest will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED in part and DENIED in part**.

The breach of the covenant of good faith and fair dealing claim and the CUTPA claim, based on a violation of the CUIPA provision prohibiting unfair settlement practices, are **DISMISSED**.

The breach of contract claim remains.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Los Cabos must seek leave to file an Amended Complaint by **May 1, 2026**.

**SO ORDERED** at New Haven, Connecticut, this 30th day of March, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

16